United States v. Mamadou Diallo United States v. Diallo United States v. Diallo May it please the Court. My name is Renee Pietropalo and I represent Mr. Diallo, the This is an issue of statutory construction. We're talking about the 2005 version of 18 U.S.C. 2320, which is trafficking in counterfeit goods. Congress explicitly wrote the statute to require two particular acts that the defendant intentionally traffics or attempts to traffic. Excuse me. Again, as I was saying, there are two particular acts that Congress required. Intentional trafficking or attempt to traffic in goods and services and knowingly uses a counterfeit mark on or in connection with such goods or services. The only element contested by Mr. Diallo below was whether he used a counterfeit mark on or in connection with the goods. And I submit that the ordinary language of the statute, the context of the statute, the legislative history, and the 2006 amendments to the statute, along with the rule of lenity, all help show that between July 11th and 13th, 2005, Mr. Diallo was not, in fact, using the The definition submitted below had an active employment element to it. And active employment was used to mean to show the mark, to barter with the mark which is on the goods. But you don't need to barter. You've got trafficking. You've got trafficking as the active The separate element of the offense, right? Certainly the trafficking is a separate element of the offense. So use can't mean or equal trafficking or use swallows up trafficking. One of these terms would be superfluous. So using, okay, again, using means showing? Showing, bartering with, displaying the goods, selling the goods. No, selling is trafficking. Trafficking encompasses what you're doing with the goods. Here we're talking about the mark. Using the mark on or in relation to. Using the mark. You know, how do you use a mark? If Mr. Diallo were standing on the street and someone approached him and said, do you have any bags? And he says, yeah, look at these. I've got these Louis Vuittons. Okay, so he has to say Louis Vuitton when he traffics. I don't even think he needs to say Louis Vuitton if he's referring to the mark. Using means referring? Isn't it sufficient that if a mark is affixed to a good or you are selling the mark in relation to, in connection with. Maybe the stall is there and the Louis Vuitton counterfeit label is all over the stall. You're using the mark on or in connection with the goods. Your second example I do agree with, you know, using at the stall, him at the stall with the goods either in the back room or hanging somewhere. So why isn't he using the mark as soon as he affixes it to the good? First of all, he didn't affix it. Whoever does, whoever goes through the action of affixing it and then once it is in his possession. The person affixing would be using. And in fact, there are instances where a man standing on the street, you look at the bags, you like the bags, you give the guy money for the bags and he then gives you the bag. Your entire argument is it not requires that we continue to focus on this very temporal frame which involves a transaction, doesn't it? You're drawing on Bailey, you're drawing on Watson, and the focus of that makes us look to this narrow point in time where a transaction takes place. Actually, no. I understand the courts, there's a temporal aspect to it, certainly. But I understand the district court's position that when he purchases it with intent to later sell it, that that's the use. He's purchasing it to sell it in his store later. That's the goods, it's not the mark. She's trafficking in the goods. That's the violation, correct? Trafficking in the goods where you have a mark affixed or used in relation, referred to in relation or somehow in relation to the goods. Trafficking is the prescribed act, is it not? You're trafficking the goods, you use the mark. In relation. Knowingly use the mark in connection with honor, in connection with the good, certainly. If the answer were... Do you have to refer or demonstrate? I'm really looking for your definition that you would have wanted. Your definition is... That there has to be some sort of active element to it. That's based entirely on Bailey, correct? No, no, no. It starts with Bailey and I say... Bailey, the definition offered by the Supreme Court in Bailey, Watson and Smith is not limited to the 924C context because what the Supreme Court does in that case is look at the ordinary language first and foremost. And it tells us, you know, only a government lawyer would say when you receive something in a transaction that you have used that item. And the ordinary... So first what they do is look at the ordinary use of the language and that's where it can't be mere possession of the goods or the mark affixed to the goods. It can't be possession with intent to later traffic. The next thing that the court did in the 924C cases was look at the context of the statute to determine whether the context affected the definition of use. First they said... They looked at use in other contexts and said, well, use isn't limited to mere possession. Why doesn't the context here mean that the use word is a relationship, an associational word that means there has to be the connection? And, in fact, there are case laws cited by Judge Hardiman where the label is not. Let's say that the Kate Spade has been razored off and in his car he has a box full of Kate Spade labels and then he goes and sells the handbags. Well, that doesn't qualify as the association. So how in the context of trafficking, of the trafficking statute, do you find that the normal meaning is that somehow there is an activity? I mean, using a gun. A gun can be used. A gun can be manipulated and dealt with. I mean, a lawnmower can be used. A lot of things can be used. But a mark doesn't really mean anything in terms of the use except when you add the honor and connection with. Then you say, aha, there is an associational reference. I'm just having difficulty finding that the mark, the use of a mark, is the same as the use of a gun. Are you supposed to make it dance or make it jump or throw it in the air? I mean, it just doesn't work. Well, there are several aspects to my answer, but the simplest part is if Congress had intended for simple application of the label, affixed to the goods, to be the use, they would have written it that way. And they know how to write it that way. And we know that they know how to write it that way because when you look at the 2006 amendments to the statute, they actually say, they add another way of committing this crime to close that label loophole that you were referring to earlier with Judge Hardeman's opinion. But affixed doesn't really work. Affixed or attached doesn't work because it's the concept of use on or in connection with. So that's a broader thing than just affixed, and it conjures up, again, an associational that is broader than affixing, is it not? What I would say is I would look to the 2006 definition and see how the Congress actually explained what they meant there in those cases. When they changed the statute, they recognized that use wasn't required with the labels because they changed it to say labels knowing that a counterfeit mark had been applied thereto. So that's how they changed it to make it different from use in our context. And I also point to the legislative history. The bill that was originally passed would have encompassed exactly the conduct that you're talking about because the original bill proposed criminalized intentional trafficking in goods or services when the defendant knew that the goods or services were counterfeit. That's what happened here, but that's not the statute that passed. The House had a different proposal. They wanted this use element, and there was a compromise bill which put the and language requiring intentional trafficking and knowing use. And then when we look at the history, we're supposed to look at the House bill to talk about what does use mean, and in there what they were explaining was they have the use element because they want to make sure they're getting use for commercial purposes. They refer to the land. Actually, no. They didn't because they say that the joint statement says if we don't specifically speak to something, look to the House statement. And the House statement did specifically speak to use, and they do talk about this commercial aspect. Judge Pollack? I think we know as a predicate that a counterfeit item which does not have a label, doesn't give a purport to say that it's an original handbag, doesn't contravene the statute. But to revert to another piece of legislative history, when the joint report tells us, and after all we're talking about legislation which makes it criminal not merely to traffic, but to intend traffic, to attempt a trafficking, this bill is intended to reach all trafficking in counterfeits that affect interstate commerce, including trafficking that is discovered in its incipiency, such as before counterfeit merchandise has left the factory. Isn't that what we have here, except this has left the factory, and it's on its way to Indiana to be sold? I understand. I'm thinking that that was in the original Senate report, but I could be wrong. It could be in the joint statement. And they talked about that, but it is incipiency. When you're talking about the place of manufacture, you have a use going on because people are actually putting the labels, if you will, sewing them on, gluing them on, or what have you. There's one thing I should point out. Congress was very clear when they enacted the statute in 1984. There are civil remedies available for this, and they wanted to make the statute very narrow to reach the most egregious conduct. You don't say narrow. You mean they wanted to make it broad, right? They wanted to make the criminal sanctions narrow to reach the most egregious conduct. And I'm not suggesting that Mr. Diallo was not guilty of something when he was stopped and that he could walk away free simply because they stopped him too soon. That would be ridiculous. He was, in fact, charged with a state crime, PACS 4119, which is possession with intent to sell or distribute items bearing a counterfeit mark. That's what he was charged with. My suggestion is the error was instead letting the state charge go and superseding with the federal charge, he simply wasn't guilty yet. It's no more ridiculous to suggest an individual who intends to cross state lines with a woman for the purpose of committing prostitution is stopped for a traffic violation shortly before he gets to the border. He clearly had the intent to cross state lines and do this prostitution act, but he stopped too soon. He can't be charged with and convicted of the Mann Act violation. If the statute read affixed, there's no problem, correct? That's exactly the point, that the statute's not clear. Because it's trafficking. Yes. Use can't be the same thing as trafficking. Congress knows how to write use in a very clear way and has done it in many different statutes. But again, trafficking is a completely separate element of the statute. And if you read use to equal trafficking, which if you look at the 2006 amendments, they actually redefined trafficking to equal possession with intent to distribute. So use cannot mean the same thing. And the rule of lenity, which just in 2008 in the Santos opinion, Justice Scalia reaffirmed, the purpose of the rule of lenity is to make Congress responsible for making these tough calls. The court should not have to legislate criminal intent or Congress's intent. And that's one of the reasons why the statute can't be applied to Mr. Diallo. Thank you. We'll hear from you on rebuttal. May it please the Court, Laura Irwin from the U.S. Attorney's Office in the Western District of Pennsylvania, on behalf of the government. This Court should affirm the District Court's reasonable interpretation of the term use as set forth in Title 18, Section 2320. The phrase, the term we're trying to decide on today is use in connection with or on a good or a service. And the District Court fairly and adequately defined that for the jury to mean to make use of, to put into action, to convert to one's service, to avail oneself of, to have recourse to or enjoyment of. That was a proper definition. He looked to the word use. It was not defined in the statute. And using all the guides that this Court and other courts have used in the past, looked to see whether or not there was a definition. There was not. It looked to see if it was ambiguous. It was not. And even the defendant now does not argue that the term is ambiguous. The court went on to look to the context of the statute, the title of the statute, and all the other indicators that this Court and other courts look to in this circumstance and properly turn to the definition to come up with this definition of the term use in the context of, in connection with or on a good or a service. We're talking about a commercial activity of trafficking and counterfeit goods. So you're saying that without any ambiguity being urged, the legislative history is irrelevant? I agree, Your Honor. That's our point is that it is irrelevant. Not even Mr. Diallo in his brief argues that it's ambiguous. He just takes issue with the choice the district court made when it looked to the definition. He's saying active. He's saying, I think as a preliminary matter, and I think Judge Smith pointed this out, their position is this prosecution was premature. And it's not clear to me whether that's a timing issue or a location issue. They're saying when he was on Interstate 80, he was not actively using this mark. But they agree that had he been back in Indianapolis at his store and had the purses in inventory, he would be using it. And I think that there's no way you can come to a conclusion that the word use, as set forth in this statute, includes turning use on and off. Following up on your position that this is a question that can be resolved from the statute itself, that we don't need recourse to the legislative history, what, if anything, can we derive from the reference in subsection C to the Lanham Act? There's a specific reference in subsection C to the Lanham Act and the use, for lack of a better term, of the term use in the Lanham Act. Does that help your position? I think it helps to the extent that use is the word that's used in the context of marks because they are abstract symbols. I think one of the reasons why that is the word that is commonly employed is because there are so many variants. You can have so many different types of goods. And beyond that, it's the services, I think, that make it particularly difficult. Because as Judge Rendell said, maybe the better word would have been affixed, which works for a good. It's affixed to the purse. It's affixed to the shoes. But when you talk about a service, it's very difficult, I think, to think about it in terms of affixing to a service. The lack of physicality causes it. Exactly. And that's the nature of a symbol. My point about the turning on and off is the defendant would have you believe that it can be turned on and off. And if you take their example one step further, if he's not using it on I-80, but he is using it in his inventory, where does he turn the switch on? Is he crossing the threshold to put it into inventory? Is he, you know, when he turns the corner to get onto the street of his store, does it matter whether his van says Diallo's Bags, and he uses his van, as the defendant did in the Song case, to hold their inventory? I think that's a misdirected way of looking at it. The use of the mark in connection with a good or a service. And that is something that happens and continues. It doesn't change. It could change a conviction under the statute if the other elements weren't met, if he no longer intended to traffic, if he was no longer trafficking. But in terms of use, I don't believe it can turn on and off. I think the other confusing thing that the defendant attempts to do in this case, is he does, and I think the court is pointing this out, he tends to confabulate it with an attempt to make the word seem superfluous with the other elements of this case. It is not, it has nothing to do with intent. It has nothing to do with possess. It has nothing to do with the knowledge. It is the use of the mark on or in connection with a good or a service. Do you take issue with Judge Hardiman's opinion in any way? Do you think there's certain areas of reasoning that probably don't ring true? The one criticism I would take is I think that the district court, and I think even the trial assistant at the case, was kind of taken aback by this notion of active use. And I don't even think you need to go as far as Judge Hardiman did, because it is use on or in connection with the mark. I'm sorry, use on or in connection with the good or service. Although he does say that. He says you look at context and hear the ordinary meaning when you read the whole thing. Right. And I don't take issue with that. I think it's just much simpler, I think, than what the district court realized at the time because of the arguments made by the defendant. And they were intriguing. They were creative. You know, talking about Bailey and a gun, it makes you think. But you don't need to go that far because they're so contextually different. Counsel, I think there's another issue that at least is raised in Appellant's brief. The instruction actually given to the jury defining use includes a couple of concepts to which the defendant objected, recourse and enjoyment. That's correct. And what justification is there for those terms as giving guidance to the jury? Because I think they amply describe a word that's very difficult to describe, which is it does not have to be active. I think that goes back to Judge Rendell's point where I think the district court kind of went a little bit too far and overlooked that it's a use of the mark in connection with the good. It got hung up on that activeness and was trying to show that it could be active or inactive. Tell me what recourse or enjoyment mean with respect to using a mark. To have recourse, to me, means that it's available. You have recourse, you can go back and pick it up if it's a tangible item. You can go back and refer to it if it's an intangible item. I use the dictionary to define a term. I have recourse to. Right. I have recourse to a dictionary to assist me in defining a term. You know, I have enjoyment of a dictionary. Does that work here, though? I think they do, to have recourse to. I mean, Mr. Diallo's argument was I wasn't actively using it, which I think is a matter of fact. I have two responses to that. One is the factual response, and the other is the response to your question, which is he had recourse to that because they were being used in connection with an item. He could go to his car and pull them out and physically hold them, but at all times he had recourse to them. Availing himself of. Right. At all times he could have approached someone and said, I can sell you this bag. I have recourse of, I have enjoyment of a bag that bears this mark. Tell me about enjoyment of. I think I got your point about recourse. Mr. Diallo's in a position to enjoy. He's going to enjoy it when he makes a $15 profit on each purse. It enhances the. Exactly. And that's what's the. It enhances the value of his inventory in and of itself. Exactly. Rewards of or enjoyment is a strange. You look at the mark on the good and it gives you enjoyment. I don't know. Well, I suppose to some people that's the value of having a Louis Vuitton purse is you somehow distinguish yourself and have enjoyment in distinguishing yourself from someone who just has your basic plastic bag. Just the final point with regard to the factual distinction. Mr. Diallo's position is he did not refer to these marks on Interstate 80. He would have referred to them had he not lied. He was asked what was in the bags and he said clothes. So I think his argument that he didn't refer to them on Interstate 80 really has no merit. And there's also another factual point that I overlooked in my brief that I'd like to make the court aware of is he claims that he didn't display the items on Interstate 80 and that's part of his inactive use on Interstate 80. It's a factual matter on page 97 and 98 of the brief. He did open the boxes and show the purses to Trooper Callahan and that's how he observed them as being fake purses. He knew that, you know, Louis Vuitton doesn't wrap his handles. What if he hadn't? I don't think that changes anything. Does it matter? I don't think it matters. No, but as a factual matter, it diminishes Mr. Diallo's argument that he didn't do either on Interstate 80. If there's no further questions, I'll turn the podium over. With that, we would ask that the court affirm the district court in this case. Thank you. All right. Now we will have recourse to and enjoyment of rebuttal. You're not being used. Recourse to rebuttal. Counsel, before you begin, could you inform me about something that I didn't find clear in the brief? As I understand it, your client was sentenced to a probationary term for three years. Yes. And that would include some home confinement. Has the execution of that sentence been stayed pending this appeal? What's happening to your client? You know what, I'm not actually sure. I thought that that had started, but I could be wrong. Well, I'm just wondering whether there's really an issue before us. I apologize. If you need me to find that out, I can definitely go back to the office and look that up. There was a motion. It could have been stayed pending appeal, and I honestly don't recall. The sentencing took place on August 16th of last year, right? And, yes, and I would submit even if it was true, it wouldn't be moot, because the issue here is one of the issues will be is this an aggravated felony such that he's subject to deportation? So there's a real interest in reaching this issue. First, I would say in response to the government's argument, the ordinary language of the statute makes it clear that this is not use. But you do need to look at the context. You can look at the legislative history. And to the extent it's ambiguous, or if you accept the government's reading of the statute, I submit that's an ambiguous reading or it can only result from it. Have you taken the position previously that it's ambiguous? I did assert that the rule of lenity applied. But ambiguity, has that been raised squarely? It's ambiguity to the extent that I believe the ordinary language answers the question and that the 924C cases explain that use has to be more than mere possession, more than possession with intent to deliver. It has to be something more than what is encompassed within the language of trafficking and the definition of trafficking. And the Lanham Act that you referred to does talk about the use in commerce element, which adds another element to it. I did want to make a point to address Judge Pollack's position about the jury instructions, even if you, the court, disagree with my position. The jury instruction was simply overbroad. And the government even says the court went a little too far. It's specifically with the to have recourse to or enjoyment of. I was thinking about it, racking my brain, trying to figure out what that could mean. It could mean Mr. Diallo is walking along the street in New York and has the phone number for the guy who sells these bags in his pocket. He has recourse to the bags because he can just make the call and say, I want to pick them up. Enjoyment, you're sitting on the beach. I have enjoyment of the beach. Am I actually using the beach? I mean, they're just so broad. They eliminate any definition, any restriction on the term use. And Judge Hardiman even acknowledged as much when he says, practically anything a defendant does with it will amount to use at page 12 of his opinion. The construction is completely overbroad, the instruction. We know that it's overbroad and we know that it wasn't harmless because we have the voir dire of the jury and the one juror who specifically says, I wanted the definition. When the judge said, have recourse to, I said, that's it. That's the definition I was waiting for. And that's what ultimately resulted in the conviction.  If nothing else, it needs to be remanded for a new trial because of the jury instruction error. You didn't ask for a new trial. I mean, this has been purely a sufficiency argument. The second argument, yes, and the second argument is jury instruction error. Can I go back to one issue that you referred to? Well, it is a pretty good concept, operative in lots of situations. I would suggest this is one of the least deserving claims of lenity that I've run into. A defendant who acknowledges his intent to complete a crime, which he's made all the arrangements for except he would say use. Is that a case for lenity? I suggest that it is because you look at the language of the statute. If the statute is unclear in any way and it's a criminal statute, you have to rule in favor. He might have been misled, is that right? Not misled. He could have hit the power ball between New York and Indiana and decided I don't want to be bothered with this and thrown all the bags away. I mean, again, these are all hypotheticals. But he was still trafficking. I mean, trafficking has been conceded. But he needs trafficking and knowing use of, and that's the crux of the argument. Okay. Thank you. Thank you. Thank you, counsel. We'll take the matter under advisement. All right. We'll call our next witness.